KLEIN LAW GROUP OF NY PLLC
120 East 79th Street, Suite 1A
New York, New York 10021
(347) 292-8170
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANASTASIA GRAY,

           Plaintiff,

- against -

ORCHID STREET ENTERPRISES, LLC, and JIM CARRANO,

           Defendants.

**COLLECTIVE ACTION COMPLAINT**

**Jury Trial Requested**

Plaintiff Anastasia Gray by her attorneys, Klein Law Group of New York, PLLC, alleges upon personal knowledge as to herself and upon information and belief as to other matters, as follows:

**PRELIMINARY STATEMENT**

1. Defendants Orchid Street Enterprises, LLC ("OSE") Jim Carrano and own and/or operate approximately a bar/lounge in the East Village called the Skinny Bar and Lounge ("Skinny Bar").

2. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, for Defendants' failure to pay Plaintiff and other similarly-situated tipped employees all earned minimum wages.

3. Plaintiff's claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of herself and on behalf of all other similarly-situated persons who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. 216(b) and who are or were (a) current or former employees of Defendants, including servers and bartenders, (b) receiving sub-minimum hourly wages under the tip-credit provisions of the federal and state law ("Tip-Credit Employees"), and (c) employed by Defendants at Skinny Bar during the applicable statute of limitations period covered by this Complaint (i.e. two years for FLSA violations, and three years for willful FLSA violations) up to and including the date of final judgment in this matter (the "FLSA Collective").

4. This lawsuit further arises under the New York Labor Law, Minimum Wage Act ("NYLL"), Article 19, § 650, *et seq.*, for Defendants' failure to pay Plaintiff and other similarly-situated New York tipped employees all earned minimum wages.

## PARTIES

**Plaintiff**

5. Plaintiff is an adult individual who is a resident of Manhattan, New York.

6. Plaintiff was employed as a bartender at the Skinny Bar which is located at 174 Orchard Street, New York, New York 10002 from approximately June of 2019 through September of 2020.

7. Plaintiff is a covered employee within the meaning of the FLSA and the NYLL.

8. For the few weeks that Defendants paid Plaintiff, Defendants paid Plaintiff at (or below) a sub-minimum, tip-credit wage to work as a bartender at Skinny Bar.

9. Defendants did not satisfy the prerequisites to apply a tip credit towards her wages because they did not provide Plaintiff Gray, or other members of the collective with appropriate notice of the tip credit, because they took more of a credit than either the FLSA or NYLL permits,

and because Defendants forced Plaintiff Gray and members of the collective to share tips with non-food service workers.

10. Furthermore, while paying Plaintiff Gray and members of the collective at (or below) the sub-minimum, tip-credit wage, Defendants required Plaintiff Gray and members of the collective to spend more than two hours, and/or in excess of 20% of their work time during their shifts performing work that had no customer interaction and did not generate tips.

11. Plaintiff Gray typically spent approximately 40% of her work time each week performing such duties.

12. A written consent form for Plaintiff is being filed with this Complaint. *See* Ex. A.

**Defendants**

**Orchid Street Enterprises, LLC**

13. OSE is a limited liability company organized under the laws of the State of New York with its principal place of business at 174 Orchid Street, New York, New York 10002.

14. OSE has owned and/or operated Skinny Bar during the relevant period, which is where Plaintiff worked.

15. OSE is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant hereto, employed Plaintiff and similarly situated employees.

16. Upon information and belief, at all relevant times hereto, OSE's annual gross volume of sales made or business done was not less than $500,000.00 in each of the last three calendar years.

**Jim Carrano**

17. Defendant Jim Carrano is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

18. Defendant Jim Carrano is sued individually and in <u>his</u> capacity as an owner, officer and/or agent of Defendant Corporation OSE. For example, in a New York Post article dated December 6, 2019, Mr. Carrano is identified as the "owner" of the Skinny Bar.

19. Defendant Jim Carrano possesses or possessed operational control over Defendant OSE, maintains or maintained an ownership interest in Defendant OSE and/or controlled significant functions of Defendant OSE. For example, Defendant Carrano determined the wages and compensation of the employees of Defendants, including Plaintiff Gray, established the schedules of the employees, maintained employee records and had the authority to hire and fire employees.

## JURISDICTION AND VENUE

20. This Court has federal question jurisdiction over Plaintiff's FLSA claims, which arise under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. § 1331.

21. This Court has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367.

22. Venue is proper in this judicial district because the facts and events giving rise to Plaintiff's claims occurred in this judicial district. 28 U.S.C. § 1391.

## STATEMENT OF FACTS

23. When Defendants first hired Plaintiff Gray on or around June of 2019 she worked 2 shifts per week, on Fridays and Saturdays.

24. During this period of time she was scheduled to work from approximately 8:00 p.m. until 4:00 a.m. or 4:00 p.m. to 2:00 a.m. on both Fridays and Saturdays.

25. In reality; however, Plaintiff Gray worked approximately from 8:00 p.m. until approximately 5:30 or 6:00 a.m.

26. Within a month after the beginning of her employment Defendants increased Plaintiff Gray's schedule so that she now worked on Wednesdays and Thursdays, in addition to her existing Friday and Saturday shifts.

27. Plaintiff Gray's Wednesday afternoon shift began at 3:30 p.m. and ended at approximately 11:00 p.m. to 12:00 a.m.

28. Plaintiff Gray's Thursday evening shift began at approximately 8:00 p.m. and ended at approximately 5:00 a.m.

29. This schedule lasted until approximately until January of 2020 when the Covid-19 pandemic began. From the beginning of this time period, until her termination in September of 2020, Plaintiff Gray worked two shifts per week for approximately 24 hours per week.

30. Throughout her employment, Defendants only paid Plaintiff Gray on a sporadic basis.

31. Defendants would often go weeks, or even months without paying Plaintiff.

32. During these time periods, Plaintiff Gray only took home some tip compensation but she received no direct wages from Defendants.

33. Defendants also neglected to pay other bartenders and servers at Skinny Bar for many workweeks.

34. Even when Defendants did pay Plaintiff, her pay was woefully short - - both in terms of the rate of pay that she was paid, which was always below the applicable minimum wage, including the tip credit minimum wage, and in terms of the hours she was compensated for. For example:

a. For the workweek between March 2, 2020 and March 8, 2020 – Defendants paid Plaintiff Gray at that rate of $8.00 per hour for 21.47 hours.

b. For the workweek between June 28, 2020 and July 4, 2020 – Defendants paid Plaintiff Gray at that rate of $8.00 per hour for 15 hours.

c. For the workweek between July 26, 2020 and August 1, 2020 – Defendants paid Plaintiff Gray at that rate of $11.35 per hour for 15 hours.

d. For the workweek between August 2, 2020 and August 8, 2020 – Defendants paid Plaintiff Gray at that rate of $11.35 per hour for 10 hours.

35. In all of these examples, Plaintiff Gray worked more hours than those reflected in her pay statement. Also, Defendants improperly compensated Plaintiff Gray at a rate that is/was below the full minimum wage and often at a rate that was below the tip credit minimum wage.

36. But again, Defendants completely failed to pay Plaintiff Gray for most of the weeks that she worked.

**Non-Tipped Duties**

37. Defendants employed Plaintiff Gray as a bartender, but in actuality her duties included a substantial amount of time spent performing the non-tip producing duties described below.

38. Defendants required Plaintiff Gray to spend several hours each day performing non-tipped duties unrelated to tipped work, including but not limited to carrying tables, bringing up ice

and refilling the ice buckets, setting up tables, carrying water, sweeping, polishing glasses after they are washed, cleaning the shelf for the glasses, cleaning the wood around the restaurant, cleaning the ice buckets, carrying chairs back to their original location at the beginning and at the end of the night, and carrying used plates, glasses and utensils for cleaning, sweeping floors of the entire establishment, including the bathrooms. Defendant also obligated Plaintiff Gray and other employees to come in and do a deep cleaning of the bar with no compensation during the summer of 2019 (hereinafter, "non-tip duties").

39. Under both the FLSA and NYLL, Defendants were not entitled to apply a tip credit towards Plaintiff Gray's wages because Plaintiff Gray's non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. § 146).

40. Defendants employed the policy and practice of disguising Plaintiff Gray's actual duties in payroll records to avoid paying Plaintiff Gray at the minimum wage rate, and to enable them to pay Plaintiff Gray at the lower tip-credited rate by designating her as a bartender instead of a non-tipped employee.

41. Under the FLSA, as interpreted by the Department of Labor (the "DOL"), employers may not take the tip credit for time the employee is engaged in a non-tipped job and instead must be paid at the minimum wage. The DOL has formalized this concept under the "Dual Jobs" regulation:

> Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee . . . is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress

who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. . . . Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips. 29 CFR 541.56(e)

42. The Dual Jobs regulation imposes both quantitative and qualitative restrictions on the employer's ability to take the tip credit for non-tip-producing tasks, as explained in the DOL's Field Operations Handbook (the "Handbook" or "FOH"). The quantitative restriction limits the amount of time an employee can spend on tasks related to the tipped occupation, as follows 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties, are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses. FOH Section 30d00(e)(2) (rev. 668, June 20, 2012). The Handbook continues: "[W]here the facts indicate that tipped employees spend a substantial amount of time (in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance. FOH Section 30d00(e)(3). This "20 percent tolerance," which is one method of determining whether an employee is effectively engaged in a dual jobs position, is referred to as the "20% Rule."

43. Likewise, under state law, Defendants were not entitled to a tip credit because the bartenders and Plaintiff Gray's non-tipped duties exceeded 20% of each workday (or 2+ hours a day, whichever was less) (12 N.Y.C.R.R. § 146).

44. In addition to their tip-producing duties involved in serving customers, Defendants' Tip-Credit Employees were required to perform non-tipped work each shift which does not involve guest interaction or generate tips.

45. Defendants required their Tip-Credit Employees to perform non-tipped work before their Restaurants are open to customers without affording them the ability to use a separate minimum wage "setup" code.

46. Defendants required their Tip-Credit Employees to perform non-tipped work after their Restaurants are closed to customers, again without any separate minimum wage rate.

47. Defendants' policy and practice is or was to utilize Tip-Credit Employees to perform "back of the house," kitchen, and maintenance duties and other jobs that are non-tipped and unrelated to their tipped occupation.

48. Defendants have a policy and practice of paying Tip-Credit Employees subminimum hourly wages under the tip-credit provisions of the federal and state law.

**Tip Misappropriation**

49. In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiff Gray's tips and made unlawful deductions from the Plaintiff's and other similarly situated employees' wages.

50. Defendants divested 20% of Plaintiff Gray's tip compensation and remitted that portion of tips to employees who did not perform any customer facing activities, who performed most of their work in the kitchen and/or basement, and who were not food service workers.

51. In addition, it was well known that Defendants would use tip proceeds to pay security costs as well as other vendors, which resulted in employees waiting for their pay for weeks.

52. Defendants did not keep records of hours each employee worked.

53. Defendants' conduct extended beyond Plaintiff Gray to all other similarly situated employees.

**Retaliation**

54. Beginning in the summer of 2020, Plaintiff Gray began complaining to her direct manager Djinn Van Croft and to Defendant Caranno that: (i) she was not paid regularly, and (ii) that historically she was paid $8.00 per hour, which was below the applicable minimum wage.

55. Plaintiff Gray continued to discuss these issues and began keeping a list that kept track of the amount of money Defendants owed her and other members of the collective.

56. Shortly after Plaintiff Gray began making these complaints, Defendants terminated her employment.

## FLSA COLLECTIVE ACTION CLAIMS

57. Plaintiff Gray brings her FLSA minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants, or any of them, on or after the date that is three years before the filing of the complaint in his case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

58. At all relevant times, Plaintiff Gray , and other members of the FLSA Class who are and/or have been similarly situated, had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs,

procedures, protocols and plans of willfully failing and refusing to pay them the required minimum wages.

59. The claims of Plaintiff Gray stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FLSA MINIMUM WAGE PROVISION

60. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

61. At all times relevant to this action, Defendants were Plaintiff Gray's employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d).

62. Defendants had the power to hire and fire Plaintiff Gray (and the FLSA class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

63. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

64. Defendants failed to pay Plaintiff Gray (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

65. Defendants' failure to pay Plaintiff Gray (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

66. Plaintiff Gray (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE NYLL MINIMUM WAGE PROVISION

67. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

68. At all times relevant to this action, Defendants were Plaintiff Gray's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

69. Defendants had the power to hire and fire Plaintiff Gray (and the FLSA Class members), controlled terms and conditions of employment, and determined the rates and methods of any compensation in exchange for employment.

70. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiff Gray (and the FLSA Class members) less than the minimum wage.

71. Defendants' failure to pay Plaintiff Gray minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

72. Plaintiff Gray (and the FLSA Class Members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## NYLL § 191, 198 - UNTIMELY WAGE PAYMENTS

73. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

74. At all relevant times, Plaintiff was employed by Defendants as a manual worker, performing all manual, physical and repetitive tasks including moving, lifting, moving, handling, marking, counting, inspecting, and shipping inventory, merchandise and packages throughout her workday.

75. Defendants have been Plaintiff's "employer" within the meaning of the NYLL and any applicable wage order promulgated pursuant to the NYLL.

76. Defendants knowingly and willfully violated Section 191 of the NYLL by failing to pay her timely wages on a weekly basis and by instead paying her less frequently.

77. Plaintiff seeks damages in the amount of her unpaid compensation, liquidated (double) damages, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**NEW YORK NOTICE REQUIREMENTS, NYLL §§ 195(1)(a), 195(3), 198**

78. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

79. Defendants did not provide Plaintiff with the Wage Theft Prevention Act notice at the time of hire as required by NYLL § (1)(a)

80. Defendants did not provide Plaintiff with correct and accurate notices/wage statements required by NYLL § 195(3).

81. As a result of Defendants' unlawful conduct, Plaintiff is entitled to an award of damages pursuant to NYLL § 198, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by NYLL § 198.

**FIFTH CAUSE OF ACTION**
**FAILURE TO PAY WAGES UPON TERMINATION, NYLL §§ 191(a) and 191(3)**

82. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

83. At all relevant times, Defendants were Plaintiff Gray's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

84. New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the

gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

85. Defendants unlawfully misappropriated a portion of Plaintiff Gray's tips that were received from customers and used those tips to pay non-food service workers including back of house barbacks, security guards, and to pay the restaurant's vendors.

86. Defendants knowingly and intentionally retained a portion of Plaintiff Gray's tips in violations of the NYLL and supporting Department of Labor Regulations.

87. Plaintiff Gray was damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## RETALIATION

88. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

89. At all times relevant to this Action, Plaintiff Gray was an employee of Defendants pursuant to the FLSA and NYLL.

90. Defendants retaliated against Plaintiff Gray for complaining about FLSA and NYLL violations including but not limited to making timely wage payments, and not paying a sufficient amount of wages to satisfy their minimum wage obligations.

91. Defendants terminated Ms. Gray's employment almost immediately after she began complaining about these violations.

92. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Gray has suffered, and continues to suffer, substantial monetary losses including back pay and other lost employment benefits. She has also suffered non-monetary damages, including, but not limited to emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, and humiliation.

93. As a result of Defendants' unlawful conduct, Plaintiff Gray is entitled to compensatory damages, including, but not limited to, damages for economic loss, emotional distress, physical injuries, and medical treatment, and such other legal and equitable relief as this Court deems just and proper.

## SEVENTH CAUSE OF ACTION
## FAILURE TO PAY SPREAD OF HOURS

94. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

95. At all times relevant to this Action, Plaintiff Gray was an employee of Defendants pursuant to the FLSA and NYLL.

96. Throughout her employment, Plaintiff Gray was required to work shifts that lasted longer than ten hours.

97. Despite the length of her shifts, Defendants failed to pay her spread of hours compensation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that judgment be granted awarding:

A. An award of damages, according to proof, including back pay, front pay, punitive damages, and liquidated damages, to be paid by Defendants;

B. An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

C. An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, punitive damages, and liquidated damages, to be paid by Defendant;

D. Penalties available under applicable laws;

E. Costs of action incurred herein, including expert fees;

F. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663, and other applicable statutes;

G. Pre-judgment and post-judgment interest, as provided by law; and

H. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all counts so triable.

Dated: New York, New York  
December 1, 2020

Respectfully submitted,

KLEIN LAW GROUP OF NY PLLC

By: /s/ Julia Klein
    Julia Klein  
    120 East 79th Street, Suite 1A  
    New York, New York 10021  
    347.292.8170  
    jklein@kleinlegalgroup.com  
    Attorneys for Plaintiff